UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DESCARTES SYSTEMS (USA) LLC,

                Plaintiff,

                                        **REPORT AND**
                                        **RECOMMENDATION**
       -against-                          09-cv-4080 (ADS)(GRB)

CONSUMER PRODUCTS SERVICES, INC., a/k/a
CONSUMER PRODUCTS SERVICES, LLC

                Defendant.
----------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

      Before the undersigned is a motion for default judgment and other relief made by plaintiff Descartes Systems (USA) LLC ("Descartes" or "Plaintiff"), which has been referred to the undersigned by District Judge Arthur D. Spatt to issue a report and recommendation whether a default judgment should be entered and for a determination of damages.

## BACKGROUND

      Based on uncontroverted evidence, the following facts cited herein are deemed true for the purposes of this Report and Recommendation. Plaintiff Descartes, a Georgia limited liability company, Compl. ¶ 2, Sept. 22, 2009, Docket Entry ("DE") [1], alleges that defendant Consumer Products Services, Inc., a/k/a Consumer Products Services LLC ("CPS" or "Defendant"), a New York corporation, *id.* ¶ 3, failed to pay for services that Plaintiff performed for Defendant under a set of agreements ("Agreements") that the parties entered into on or about September 17, 2007. *See id.* ¶¶ 1, 8. Plaintiff asserts three claims against Defendant: (1) breach of contract, (2) unjust enrichment, and (3) an account stated. *Id.* ¶ 1.

1

On September 22, 2009, Plaintiff filed the complaint. *Id.* On September 23, 2009, Defendant's managing agent was personally served with a copy of the complaint at 10 Grand Boulevard, Deer Park, NY 11729. Landau Aff. Ex. C, Oct. 13, 2011, DE [16]. On April 12, 2010, Judge Spatt issued a notice requesting that Plaintiff inform the Court in ten days why the case should not be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure due to inactivity on the case. Notice of Impending Dismissal, Apr. 12, 2010, DE [4]. In connection with this action, Kevin O'Boyle, the Chief Finance Officer of CPS, and Stephanie Ratza, President of Descartes, signed a document entitled "Settlement Agreement and Conditional Mutual Release" ("Settlement Agreement") dated April 22, 2010. *See* Ratza Aff. Ex. C, Oct. 13, 2011, DE [16]. On April 22, 2010, Plaintiff filed a Motion for Settlement with the Court, seeking the action to be placed on inactive or suspended status pending the completion of the terms of the Settlement Agreement. Mot. for Settlement 1, Apr. 22, 2010, DE [5]. On April 23, 2010, Judge Spatt directed the Clerk of Court "to mark the case closed, subject to the submission of a stipulation of settlement." Order Dismissing the Case 2, Apr. 23, 2010, DE [6]. By that Order, the Court also retained jurisdiction to enforce the settlement. *Id.*

On July 7, 2010, Plaintiff submitted a letter to the Court requesting the action be restored to active status based on Defendant's failure to make payments according to the Settlement Agreement, and for Defendant's failure to sign to the Stipulation of Settlement. Letter 1, July 7, 2010, DE [7]. On August 31, 2010, Judge Spatt granted Plaintiff's request, and directed the Clerk of Court to restore the case to active status. Order Reopening Case 2, Aug. 31, 2010, DE [9]. On September 20, 2010, Plaintiff submitted a Motion for Notation of Defendant's Default under Rule 55(a) of the Federal Rules of Civil Procedure, Mot. for Entry of Default, Sept. 20, 2010, DE [12], along with an affidavit in support of the Motion. Pl.'s Aff., Sept. 20, 2010, DE

2

[11].  On September 21, 2010, the Clerk noted Defendant's default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  Notation of Default 2, Sept. 21, 2010, DE [14].  On October 3, 2011, Judge Spatt issued an order, directing the Plaintiff to file a Motion for Default Judgment within ten days of the order.  Order 2, Oct. 3, 2011, DE [15].  On October 13, 2011, Plaintiff filed a Motion for Default Judgment.  Mot. for Default J., Oct. 13, 2011, DE [16].

## DISCUSSION

### a. Default Judgment Standard

Federal Rule of Civil Procedure 55 ("Rule 55") establishes a two-step process for obtaining a judgment against the defaulting party.  *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  First, the Clerk of the Court, upon notification from the party seeking affirmative relief, enters default against the party that has failed to plead or otherwise defend in the action.  Fed. R. Civ. P. 55(a); *Priestley*, 647 F.3d at 504-05.  Second, the plaintiff must seek a judgment under Rule 55(b), following one of two procedures.  The plaintiff may request that the Clerk of the Court enter judgment if the plaintiff's claim is for a sum certain (or a sum that can be made certain by computation), the defendant has failed to appear, and the defendant is neither a minor nor an incompetent.  Fed. R. Civ. P. 55(b)(1); *Priestley*, 647 F.3d at 505.  In all other cases, the party seeking a judgment by default must apply to the court pursuant to Rule 55(b)(2).  *Priestley*, 647 F.3d at 505.

Plaintiff now applies to the Court pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure for an entry of default in its favor.  Plaintiff has satisfied the procedural prerequisites to a default judgment.  After defendant failed to appear in this action, plaintiff sought notation of the defendant's default, which the Court clerk so entered.  *See* DE [5].  Plaintiff then moved the Court for default judgment.  *See* Def. Mot, DE [6].

**b. Liability**

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. *See, e.g., Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to establish that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Liberty Mut. Ins. Co. v. Fast Lane Car Serv.*, 681 F. Supp. 2d 340, 346 (E.D.N.Y. 2010) (citation omitted); *see also Lyons P'ship, L.P.*, 702 F. Supp. 2d at 111 (quoting *Leider v. Ralfe*, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) ("[A]fter [a] default, . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.")).

As a result of Defendant's default, the following facts in the complaint are deemed admitted and establish Defendant's liability: on September 17, 2007, Descartes and CPS entered into the GLN Services Agreement, the Professional Services Agreement ("PSA"), and an Initial Statement of Work ("Statement of Work"). Compl. ¶ 8. The GLN Services Agreement, the PSA, and the Statement of Work all incorporate a document entitled GLN Services Master Terms ("Master Agreement," and together with the GLN Services Agreement, PSA, and the Statement of Work, the "Agreements"). *Id.*

Section 2.1 of the Master Agreement provides that "[c]ustomer shall pay Descartes the Fees in the amounts and on such terms as set out in the Agreement." *Id.* ¶ 10. Section 2.3 of the Master Agreement provides:

> [a]t Descartes' option, Descartes may assess a late payment fee equal to one and one half per cent (1.5%) of the unpaid amount for each succeeding thirty (30) day period or portion thereof in which Descartes has not received payment from Customer of fees when due. Customer agrees to reimburse Descartes for any and all collection related expenses incurred by Descartes in the collection of any amounts owed to Descartes pursuant to the Agreement.

*Id.* ¶ 11. Section 2.5 of the Master Agreement provides that "[a] failure by Customer to pay Fees when due shall be deemed to be a material breach of the Agreement." *Id.* ¶ 12.

From on or about September 17, 2007, through and including August 30, 2009, Descartes performed services and CPS incurred fees in connection with these Agreements. Descartes sent CPS invoices regularly in connection with the services it performed under the Agreements ("Invoices"). *Id.* ¶ 14.

As of September 9, 2009, CPS owed Descartes $163,311.24 in fees, and an additional $33,373.52 in late fees, for a total of $196,684.76 (the "Outstanding Balance"). *Id.* ¶ 15. CPS failed to pay any portion of the Outstanding Balance. *Id.* ¶ 16. On or about September 9, 2009, Descartes sent CPS a letter ("Demand Letter") notifying CPS that it owed the Outstanding Balance, demanded that CPS promptly pay Descartes the Outstanding Balance, and that it considered CPS's failure to pay a material breach of the Agreements. *Id.* ¶ 17. At all relevant times, Descartes fully performed all of its duties under the Agreements in the manner specified in the Agreements. *Id.* ¶ 18. Plaintiff's complaint clearly sets forth facts that establish Plaintiff's claim for breach of contract.

Under New York law, the elements of a breach of contract are (1) the existence of a contract, (2) performance of a contract by one party, (3) breach by the other party, and (4) damages. *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 404 (S.D.N.Y. 2004) (citing

5

*Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)); *see also JP Morgan Chase v. Elec. of N.Y., Inc.*, 893 N.Y.S.2d 237, 239 (N.Y. App. Div. 2010).

Here, Defendant is liable for breach of contract. On September 17, 2007, the parties entered into the Agreements. Compl. ¶ 8. The Agreements provide that Plaintiff would perform services outlined in the GLN Services, in exchange for Defendant's payment of fees. *See id.* ¶ 9; Ratza Aff. Ex. C. From on or about September 17, 2007 through and including August 30, 2009, Plaintiff performed services and Defendant incurred fees in connection with those Agreements. Compl. ¶ 14. At all relevant times, Plaintiff fully performed all of its duties under the Agreements in the manner specified in the Agreements. *Id.* ¶ 18.

Defendant then breached the Agreements, causing Plaintiff damages. Defendant incurred fees as a result of Plaintiff's services from the Agreements. *Id.* ¶ 14. Defendant failed to pay any portion of the Outstanding Balance from the Agreements. *Id.* ¶ 16. Section 2.5 of the Master Agreement provides that "[a] failure by Customer to pay Fees when due shall be deemed to be a material breach of the Agreement." *Id.* ¶ 12. Plaintiff notified Defendant that it owed the Outstanding Balance, and that Plaintiff considered Defendant's failure to pay to be a material breach of the Agreements. *Id.* ¶ 17. Therefore, upon its default, Defendant is liable for breach of contract.

**c. Damages, Interest and Costs**

Though the amounts sought in the Complaint are substantially higher, due to an intervening settlement agreement between the parties (with which Defendant has apparently failed to comply), Plaintiff is seeking significantly less. *See* Pl.'s Memo. in Support of Mot. for Default J., Oct. 13, 2011, DE [16]. According to the evidence of record, as part of the settlement of these claims, defendant agreed to pay $65,711.24 plus attorneys' fees, costs and

disbursements and interest at the rate of 8%. Ratza Aff. Ex. C. Defendant made payments totaling in total of $30,000.00 toward this sum. Ratza Aff. ¶ 10, Ex. D. Plaintiff has submitted detailed billing records in support of its claim of attorneys' fees of $6,870.00. Landau Aff. Ex. G. Plaintiff also submitted detailed billing records in support of its claim of costs and disbursements amount of $625.16. *Id.*

"Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of default judgment." *See Liberty Mut. Ins. Co.*, 681 F. Supp. 2d at 349 (citing *Greyhound*, 973 F.2d at 158). "[T]he plaintiff must prove its damages to a 'reasonable certainty.'" *Liberty Mut. Ins. Co.*, 681 F. Supp. 2d at 346 (citing *Credit Lyonnais Sec. (USA) Inc. v. Alcantara*, 183 F.2d 151, 155 (2d Cir. 1999)). Reasonable certainty means that "damages may not be merely speculative, possible or imaginary, but . . . directly traceable to the breach, not remote or the result of other intervening causes." *Travellers Intern., A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1577 (2d Cir. 1994) (citation omitted); *see also Greyhound*, 973 F.2d at 159 (holding that to establish damages upon default, the plaintiff need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded). "The moving party is entitled to all reasonable inferences from the evidence it offers." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 125 (E.D.N.Y. 2011) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

The court may hold an evidentiary hearing for plaintiff to prove damages. *Liberty Mut. Ins. Co.*, 681 F. Supp. 2d at 349. However, if a basis for the damages specified in the default judgment exists, then the court need not hold an evidentiary hearing. *See id.* (citing *Fustok v. ContiCommodity Servs., Inc.*, 122 F.R.D. 151, 156 (S.D.N.Y. 1988)); *see also Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

Based on the unequivocal evidentiary record, Plaintiff is entitled to a payment of the remaining unpaid principal under the Settlement Agreement of $35,711.24. Plaintiff has documented costs from filing fees of the complaint and summons of $350.00, costs of service amounting to $205.10, and filing and mailing costs of $56.41. Landau Aff. Ex. G. The total costs and disbursements thus amount to $625.16. *Id.*

Plaintiff seeks to recover pre-judgment interest on its damages. Under New York law, "[p]rejudgment interest in a breach of contract action is mandated," *Gizzi v. Hall,* 309 A.D.2d 1140, 767 N.Y.S.2d 469, 472 (3d Dep't 2003), so that the "aggrieved party [is made] whole." *Spodek v. Park Prop. Dev. Assocs.*, 96 N.Y.2d 577, 581, 759 N.E.2d 760, 733 N.Y.S.2d 674 (2001). Pursuant to Section 5004 of the New York Civil Practice and Rules ("CPLR"), plaintiff is entitled to recover such prejudgment interest at the rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5004.

CPLR section 5001(b) provides that prejudgment interest "shall be computed from the earliest ascertainable date the cause of action existed," and, in the event that damages were incurred at various times, "upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001. In this case, the Court recommends that interest be calculated from October 13, 2011, the date plaintiff filed its motion for default judgment. DE [16]. Since all of the damages attributable to defendant's default occurred prior to this date, this is a reasonable approach. *See De Long Corp. v. Morrison-Knudsen Co.*, 14 N.Y.2d 346, 348 n.2, 200 N.E.2d 557, 251 N.Y.S.2d 657 (1964). Accordingly, the plaintiff is entitled to pre-judgment interest of 9% on the outstanding balance of $35,711.24 running from October 13, 2011 to the date of the judgment. Ratza Aff. Ex. C.

### d. Attorneys' Fees

Under New York law, the party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and the necessity of hours spent and rates charged. *See generally, N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir. 1983). A fee application must be supported by contemporaneous time records that describe with specificity the attorney, the nature of the work done, the hours expended, and the dates on which the work was performed. *Cruz v. Local Union No. 3 of the IBEW*, 3 F.2d 1148, 1160-61 (2d Cir. 1994). Ultimately, the court must determine whether the fee sought is "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008).

Here, Plaintiff has submitted billing records in support of its request for $6,870.00 from September 1, 2009 through August 2, 2010. Landau Aff. Ex. G. The Court has reviewed these records and finds that the level of detail is sufficient to meet the requisite standard. All the work was performed by attorney James K. Landau for $300.00 per hour, Douglas S. Trokie for $300.00 per hour, or Rose Murphy for $150.00 per hour. *Id.* The Court notes that this rate is well within "what a reasonable, paying client would be willing to pay" and thus finds it to be a presumptively reasonable fee. *Arbor Hill*, 522 F.3d at 184.

Particularly in light of the complexity of this matter, the amount sought in attorneys' fees – $6,870.00 – appears eminently reasonable.

## CONCLUSION

For the reasons set forth herein, it is respectfully recommended that plaintiff's motion for default judgment be GRANTED, plaintiff be awarded the sum of $35,711.24 in damages, plus pre-judgment interest at the rate of 9% on said sum running from October 13, 2011 to the date of

the judgment, $6,870.00 in attorney's fees and $625.16 in costs.

## OBJECTIONS

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.** *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga County,* 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
August 31, 2012

      /s/ Gary R. Brown
     GARY R. BROWN
     **United States Magistrate Judge**